## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN LEIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:12-cv-1287 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

September 24, 2013

### I.    INTRODUCTION

John Leist ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act").   This matter comes before the court on cross motions for summary judgment.   (ECF Nos. 12, 14).   The record has been developed at the administrative level.   For the following reasons, the decision of the ALJ will be VACATED, and the case REMANDED.

## II.   PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on February 17, 2010, claiming a disability onset date of September 30, 2009.  (R. at 102 – 10)[1].  Plaintiff's alleged inability to work resulted from limitations stemming from colitis and Crohn's disease.  (R. at 132).  Plaintiff was initially denied benefits on April 15, 2010.  (R. at 65 – 73).  A hearing was scheduled for March 28, 2011, and Plaintiff appeared to testify, represented by counsel.  (R. at 29 – 54).  A vocational expert also testified.  (R. at 29 – 54).  The Administrative Law Judge ("ALJ") issued her decision denying benefits to Plaintiff on April 14, 2011.  (R. at 7 – 18).  Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on July 24, 2012, thereby making the decision of the ALJ the final decision of the Commissioner.  (R. at 1 – 4).

Plaintiff filed his Complaint in this court on September 11, 2012.  (ECF No. 3).  Defendant filed an Answer on November 23, 2012.  (ECF No. 8).  Cross motions for summary judgment followed.  The matter has been fully briefed.  (ECF Nos. 13, 15, 16).

## III.   STATEMENT OF THE CASE

### A.  General Background

Plaintiff was born on September 8, 1961, was forty eight years of age at the time of his application for benefits, and was forty nine years of age at the time of the ALJ's decision.  (R. at 116).  Plaintiff obtained a GED, and thereafter completed vocational training to become a diesel mechanic.  (R. at 133 – 34).  Prior to his alleged disability onset, Plaintiff worked as an installer/laborer for a plumbing and remodeling company.  (R. at 134).  Plaintiff was unmarried, but had an adult son.  (R. at 37).  He lived independently, subsisted on cash assistance and food stamps, and received medical benefits through the state.  (R. at 38, 141).

---

[1]      Citations to ECF Nos. 9 – 9-15, the Record, *hereinafter*, "R. at __."

### B.  Treatment History

Plaintiff was first evaluated by doctors at Lawrenceville Family Health in Pittsburgh, Pennsylvania on October 20, 2009.  (R. at 217).   Plaintiff was there for exacerbation of his Crohn's disease, which had not bothered him until recently.  (R. at 217).  Plaintiff had not seen a gastroenterologist since he was a teenager.  (R. at 217).  Plaintiff stated that he had been losing a significant amount of weight, and suffered from intestinal gas and pain, and had bloody diarrhea. (R. at 217 – 18).  Plaintiff was referred for a colonoscopy.  (R. at 218).

Plaintiff appeared again at Lawrenceville Family Health for continued Crohn's-related complaints on October 16, 2009.  (R. at 222).   He informed the doctor that he had not experienced a flare-up for four years.  (R. at 222).  He explained that the flare-ups usually last for a month, and would calm down if he pays attention to what he eats.  (R. at 222).  Plaintiff also noted to have recently lost his job due to longstanding issues with his employer's son.  (R. at 222).  Plaintiff was again referred for a colonoscopy.  (R. at 223).

On January 5, 2010, Arthur Barrie, M.D. performed a colonoscopy and digital rectal examination of Plaintiff.  (R. at 197).  Dr. Barrie found that Plaintiff suffered from active Crohn's colitis complicated by ileocecal valve stenosis, ascending colon pseudopolyps, descending colon inflammation with stenosis, and rectal pseudopolyps with a possible rectal fistula. (R. at 197).

On January 22, 2010, gastrointestinal surgeon Andrew R. Watson, M.D. drained a perirectal abscess from Plaintiff.  (R. at 169 – 70).  The procedure was without complications, and Plaintiff was noted to be in good condition.  (R. at 169 – 70).

On January 25, 2010, Dr. Barrie prescribed Plaintiff azathioprine and infliximab for treatment of moderately sever ileocolonic Crohn's disease complicated by a perianal fistula and

abscess.  (R. at 245).  Plaintiff was recommended for aggressive medical management.  (R. at 245).  Plaintiff was seen again by Dr. Barrie on March 1, 2010.  (R. at 244).  Plaintiff had not been taking his prescribed medication for Crohn's management due to "self-reported misunderstanding and confusion."  (R. at 244).  Plaintiff was experiencing a "concerning" abdominal pain.  (R. at 244).

On April 23, 2010, Dr. Watson conducted a total abdominal colectomy with an ileorectal anastomosis.  (R. at 241).  Ten inches of Plaintiff's terminal ileum were removed.  (R. at 241).  On May 2, 2010, a post-operative ileus and left perianal abscess was found and drained.  (R. at 241).  Plaintiff subsequently experienced pain relief and was discharged from the hospital on May 8, 2010.  (R. at 241).

At a May 27, 2010 follow-up appointment with Dr. Watson, Plaintiff reported no nausea or vomiting, and his bloating was almost entirely resolved (R. at 239), however he had mild abdominal pain.  (R. at 239).  Plaintiff had six to ten loose bowel movements per day, but these were slowing.  (R. at 239).  He was seeing a nutritional counselor, and with an appropriate diet his diarrhea was improving.  (R. at 239).  Plaintiff's abdomen was unremarkable, and he was "doing very well".  (R. at 239 – 40).  At a June 24, 2010, follow-up appointment with Dr. Watson, Plaintiff was noted to be progressing well (R. at 237) and he was to return for follow-up in three months.  (R. at 237).

Plaintiff was seen at Lawrenceville Family Health on February 5, 2010.  (R. at 212).  It was noted that he had a perirectal abscess drained, and that he was "feeling well."  (R. at 212).  He was recommended for medication management of his Crohn's disease which was noted to be stable at the time.  (R. at 212 & 213).  Plaintiff was again seen at Lawrenceville Family Health

on February 24, 2010 and noted to be starting prescription Remicade for treatment of his Crohn's disease.  (R. at 208).

On October 28, 2010, Plaintiff underwent a CT scan of his abdomen after being hit by a car.  (R. at 273).  No acute trauma to the abdomen was found, however it was noted that post-surgery, Plaintiff had mild wall thickening and mild inflammation involving approximately ten centimeters of the distal ileum, but no other abnormality was found.  (R. at 273).

On April 13, 2010, Plaintiff's physician at Lawrenceville Family Health noted that Plaintiff complained of abdominal pain and diarrhea, however, bowel sounds were normal and there was no tenderness in the abdomen.  (R. at 350).  While at a regularly scheduled exam on June 24, 2010, Plaintiff was noted to be well-appearing, in no acute distress and while doing daily chores, walking three times per day for approximately three miles, and his Crohn's disease was "stable."  (R. at 342).  On July 22, 2010, Plaintiff's Crohn's disease was again noted to be "stable" and he was well-appearing and in no acute distress.  (R. at 331).  Plaintiff's appetite and energy level were increasing since his surgery.  (R. at 331).

Plaintiff was examined by gastroenterologist Marc Schwartz, M.D. on September 3, 2010 at which he complained of some low abdominal cramping before bowel movements having experienced ten watery bowel movements per day; however, that had been his baseline "for decades."  (R. at 388).  Dr. Schwartz observed "some mild low abdominal tenderness" and suggested that Plaintiff take Imodium for his diarrhea, and scheduled him for a follow-up colonoscopy in January 2011.  (R. at 389).

On January 5, 2011, Plaintiff underwent a colonoscopy with Dr. Schwartz.  (R. at 390).  Perianal and digital rectal examinations were normal, however active post-operative Crohn's disease was revealed.  (R. at 391).  Plaintiff was also seen at Lawrenceville Family Health on

January 12, 2011, for an eye exam at which he was reported to have no abdominal pain, nausea, vomiting, constipation, or diarrhea.  (R. at 369).

On February 15, 2011, Plaintiff appeared at Lawrenceville Family Health complaining of a recent increase in abdominal pain and was noted to have been regularly taking Motrin for pain after being hit by a car.  (R. at 385).  Plaintiff experienced occasional stool incontinence since beginning to take Motrin and was advised to stop taking Motrin because it can exacerbate Crohn's disease, as well as cause blood thinning and ulceration.  (R. at 386).  Despite complaints of "some pain," Plaintiff's abdomen was non-tender and he had positive bowel sounds.  (R. at 386).

### C.  Functional Capacity Assessment

On July 21, 2010, Dr. Watson completed a Medical Statement Regarding Social Security Disability Claim on which, he indicated that Plaintiff had abdominal pain "prior to surgery."  (R. at 252).  He noted that Plaintiff had a history of Crohn's disease, but that the most recent examination revealed that Plaintiff's abdomen was soft and non-tender, and his weight was stable, however, Plaintiff was moving his bowels ten to twelve times per day.  (R. at 252).  Dr. Watson did not complete the portion of the form regarding Plaintiff's capacity for work.  (R. at 252).

### D.  Administrative Hearing

At his hearing, Plaintiff testified that he had suffered with Crohn's disease since thirteen years of age; however, at twenty years of age the disease went into remission, and did not recur until four years prior to the hearing.  (R. at 34).  Plaintiff stated that the pain caused by his Crohn's disease made him agitated, and eventually cost him his job due to fighting with a co-worker.  (R. at 35, 47).  He had been employed at that job for approximately ten years, and was

responsible for home installation of appliances.  (R. at 38).  He claimed that he had been able to maintain that job because of the availability of bathrooms in the homes in which he worked.  (R. at 38, 48, 50).  He stated that over the course of an eight hour work day he would use the bathroom five times, for approximately ten to fifteen minutes each time.  (R. at 48).

Plaintiff explained that on a typical day he would sit at home, walk, and attend appointments.  (R. at 39).  Plaintiff was capable of using mass transit, and maintained a driver's license.  (R. at 36).  He could cook simple meals and take care of his personal needs.  (R. at 43).  Yet, he no longer engaged in hobbies due to his need to frequently use the bathroom.  (R. at 44).  He took a three hour nap each day, and spent approximately eight hours per day lying down for pain relief.  (R. at 46).  He described experiencing pain with bowel movements, and needing the use of a restroom ten to twelve times per day.  (R. at 44).  He stated that his pain was 7/10.  (R. at 45).  He did not believe that his medications helped manage his disease and that his operation made his abdominal pain worse.  (R. at 39 – 40).  He testified that he could no longer do housework following his operation.  (R. at 43).  Plaintiff claimed that he could walk and stand for no more than fifteen to twenty minutes.  (R. at 41).  He had difficulty with postural movements, and could only lift twenty pounds.  (R. at 41, 43).  His sleep was also interrupted.  (R. at 45).

Following Plaintiff's testimony, the ALJ asked the vocational expert whether a hypothetical person of Plaintiff's age, educational level, and work experience would be eligible for a significant number of jobs in existence in the national economy if  limited to performing light work requiring lifting and carrying of no more the twenty pounds occasionally and ten pounds frequently, standing for no more than six hours of an eight hour work day, sitting for no more than six, and allowing for access to a bathroom for frequent bowel movements during the

course of an eight hour day.  (R. at 52).  The vocational expert responded that such an individual would be capable of working as a "sorter," with 300,000 positions available in the national economy, as an "assembler, small parts," with 250,000 positions available, and as a "cleaner," with 500,000 positions available.  (R. at 52).  Plaintiff's attorney followed by asking whether such an individual could maintain the jobs provided if he or she would require at least five unscheduled breaks per work day for ten to fifteen minutes, each.  (R. at 53).  The vocational expert replied that no jobs would be available to a person so limited.  (R. at 53).

## IV.   STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F. 2d 581, 583 (3d Cir. 1986).   When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.  20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003).   If the

8

claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F. 2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute, and is plenary as to all legal issues. 42 U.S.C. §§ 405(g)[2], 1383(c)(3)[3]; *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 431 (3d Cir. 1999). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F. 3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a

---

[2]     Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[3]     Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 91 (3d. Cir. 1986).

## V.   DISCUSSION

In her decision, the ALJ concluded that Plaintiff suffered from a severe medically determinable impairment in the nature of Crohn's disease. (R. at 12). The ALJ limited Plaintiff to light work requiring lifting and carrying no more than twenty pounds occasionally and ten pounds frequently, involving standing, sitting, and walking for no more than six hours per day, respectively, and allowing for access to a bathroom for frequent bowel movements during the course of an eight hour day. (R. at 14). Despite the above limitations, the ALJ found that Plaintiff was capable of engaging in a significant number of jobs in existence in the national economy, based upon the testimony of the vocational expert. (R. at 16 – 17). Plaintiff was, therefore, denied DIB and SSI. (R. at 18).

Plaintiff objects to the decision of the ALJ, arguing that she committed error by failing to sufficiently accommodate Plaintiff's Crohn's disease in her RFC and hypothetical, by failing to accord due weight to the opinion of Dr. Watson, and in misconstruing medical findings to

discredit Plaintiff's testimony.  (ECF No. 15 at 5 – 10).  Defendant counters that the decision of the ALJ was properly supported with substantial evidence, and should be affirmed.  (ECF Nos. 13, 15).  The court agrees with Plaintiff, and remand is warranted.

"'[G]reat specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical." *Ramirez v. Barnhart*, 372 F. 3d 546, 554 – 55 (3d Cir. 2004) (citing *Burns v. Barnhart*, 312 F. 3d 113, 122 (3d Cir. 2002)).  This finding by the Court of Appeals reinforces the long-established rule that an ALJ must adequately accommodate impairments which are supported by the medical record.  *Id.* at 552 (citing *Chrupcala v. Hackler*, 829 F. 2d 1269, 1276 (3d Cir. 1987)).  In this task, the ALJ fell short.

The medical record includes notations by treating medical sources that Plaintiff has necessary bowel movements at frequent times throughout the day.  Plaintiff testified that he can expect to use the restroom for bowel movements at least five times in an eight hour period, for ten to fifteen minutes.  Dr. Watson opined that Plaintiff could be expected to need the use of a restroom between ten and twelve times per day.  Defendant contends that the ALJ's provision of access for "frequent" bathroom use throughout the work day was sufficient to accommodate Plaintiff's Crohn's disease-related limitations.  (ECF No. 16 at 1 – 3).  Defendant alleges that greater specificity was not required of the ALJ, because the record provided by Plaintiff did not delineate the exact parameters of Plaintiff's need for a bathroom.  (ECF No. 1 – 3).  This is an inaccurate interpretation of the objective medical findings on record.

As earlier stated, the record contains several indications of the frequency with which Plaintiff must use the bathroom.  The ALJ, herself, found that Plaintiff had ten to twelve bowel movements a day when his Crohn's was considered to be *stable*.  (R. at 15).  What the ALJ's hypothetical and RFC assessment – as well as her decision rationale – do not tell this court, is

which of those indications regarding the rate of Plaintiff's bowel movements were credited when the ALJ decided that Plaintiff required access to a bathroom on a "frequent" basis – including Dr. Watson's opinion in his assessment.  This was error.

An ALJ must be as "comprehensive and analytical as feasible," and provide the factual foundation for his or her decision and the specific findings that were rejected.  *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981). The explanation should allow a reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored."  *Fargnoli v. Massanari*, 247 F. 3d 34, 42 (3d Cir. 2001).  The ALJ "cannot reject evidence for no reason or for the wrong reason."  *Morales v. Apfel*, 255 F. 3d 310, 317 (3d Cir. 2000) (citing *Mason v. Shalala*, 994 F. 2d 1058, 1066 (3d Cir. 1993)).  Moreover, the ALJ "should not substitute his lay opinion for the medical opinion of experts," or engage in "pure speculation" unsupported by the record.  *Id.* at 318 – 19; *Daring v. Heckler*, 727 F. 2d 64, 70 (3d Cir. 1984).

Also, the testimony of the vocational expert made clear that the need to use the bathroom as few as five times in an eight hour period can preclude an individual from competitive employment, even if each restroom break takes as few as ten minutes.  (R. at 53).   An unacceptable degree of ambiguity is inherent in the ALJ's use of the term "frequent."   If, as indicated by the vocational expert, "frequent" cannot include as few as five restroom breaks for as little as ten minutes, it is imperative that the ALJ define what "frequent" does cover. Presently, whatever the ALJ meant the term "frequent" to encompass, it was not adequately conveyed in her discussion, or RFC assessment and hypothetical question, and this court will not fill in the gaps in the ALJ's reasoning.

Lastly, the ALJ must provide some rationale for implicitly rejecting Plaintiff's claim that he required ten to fifteen minutes for each bowel movement.  While the ALJ generally declined

to give all of Plaintiff's subjective complaints full weight due to incidents of non-compliance, the record demonstrated – and the ALJ noted – that during periods of stability and medication compliance, Plaintiff was still found to have multiple bowel movements each day.   Serious consideration must be given to subjective complaints where a medical condition could reasonably produce alleged pain and limitation. *Mason v. Shalala*, 994 F. 2d 1058, 1067 – 68 (3d Cir. 1993).   There need not be objective evidence of a subjective complaint, and the ALJ must explain his rejection of same. *Id.* (quoting *Green v. Schweiker*, 749 F. 2d 1066, 1071 (3d Cir. 1984)); *Burnett*, 220 F. 3d at 122.   However, when medical evidence provides objective support for subjective complaints, the ALJ can only reject such a complaint by providing contrary objective medical evidence. *Mason*, 994 F. 2d at 1067 – 68.   Here, the ALJ must provide evidence which is on-point to demonstrate that Plaintiff was not entitled to full credibility regarding his alleged ten to fifteen minute restroom use, because it has a direct impact upon his ability to find work.

## VI.   CONCLUSION

Based upon the foregoing, substantial evidence was not adduced to support the ALJ's determination that Plaintiff was not disabled under the Act.   Accordingly, Plaintiff's Motion for Summary Judgment will be granted, to the extent that remand for reconsideration is sought, and denied, to the extent that reversal and an immediate award of benefits is sought; Defendant's Motion for Summary Judgment will be denied; and, the decision of the ALJ will be vacated and the case remanded for further consideration consistent with this opinion.

"On remand, the ALJ shall fully develop the record and explain [his or her] findings… to ensure that the parties have an opportunity to be heard on the remanded issues and prevent *post hoc* rationalization" by the ALJ. *Thomas v. Comm'r of Soc. Sec.*, 625 F. 3d 798, 800 – 01 (3d

Cir. 2010).  *See also Ambrosini v. Astrue*, 727 F. Supp. 2d 414, 432 (W.D. Pa. 2010).  Testimony need not be taken, but the parties should be permitted input via submissions to the ALJ.  *Id.* at 801 n. 2.

Appropriate orders follow.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN LEIST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:12-cv-1287 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 24th day of September, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is GRANTED, in part, and DENIED, in part.

2.  Defendant's Motion for Summary Judgment (ECF No. 12) is DENIED.

3.  The Clerk will docket this case as closed.

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc:  **Robert W. Gillikin, II, Esq.**
Email: rgillikin@ruttermills.com

**Cynthia C. Berger, Esq.**
Email: cberger@bergerandgreen.com

**Paul Kovac, AUSA**
Assistant U.S. Attorney
Email: paul.kovac@usdoj.gov

15